PAYNE, Agent, v. McCONNELL.  (No. 2439.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 8, 1921. Rehearing Denied Nov. 10, 1921.)

1. Railroads ⬅═5½, New, vol. 6A Key-No. Series—Intrastate rate limiting liability within federal control.

Under Act Cong. Aug. 29, 1916, § 1 (U. S. Comp. St. § 1974a), authorizing the President to take possession of the railroads, and Act March 21, 1918, § 10 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾j), authorizing the President to initiate rates by filing same with the Interstate Commerce Commission, a rate so filed by a railroad under the government was controlling, and such rate having limited the amount recoverable on baggage to $100, the owner could not recover more on an intrastate shipment by virtue of the state law, Vernon's Sayles' Ann. Civ. St. 1914, art. 708.

2. Carriers ⬅═400—Rate filed with Interstate Commerce Commission notice of limitation of baggage liability, unless greater value declared by owner.

A rate filed with the Interstate Commerce Commission containing a limitation of baggage liability to $100, unless a greater value is declared by the owner and excess charges paid, was notice of such limitation, and governed the amount recoverable in case of loss as against the state statute.

Appeal from District Court, Gregg County; Chas. L. Brachfield, Judge.

Action by Pearl McConnell against John Barton Payne, Agent. From judgment for plaintiff, defendant appeals. Reformed and affirmed.

October 22, 1919, appellee, having purchased a ticket entitling her to be carried from Dallas, in this state, to Longview Junction, also in this state, over the Texas & Pacific Railway Company's line of road, then being operated by the federal government through its Director General, delivered a trunk containing clothing, etc., to the carrier's agent at Dallas, and received therefor a check showing same was to be carried as baggage to Longview Junction. Neither the trunk nor its contents, nor any of same, were ever afterwards delivered to appellee. Alleging a breach by the carrier of its duty to safely transport the trunk and deliver same and its contents to her at Longview Junction, appellee sued the Director General and recovered a judgment for $1,360.50, the value, she alleged and proved, of the trunk and its contents.

From findings made by the trial court it appears that, at the time appellee purchased the ticket and received the check, Baggage Tariff No. 25-2, duly filed with the Interstate Commerce Commission September 20, 1919, was in force. Said tariff "was issued," quoting from the trial court's findings, "under the authority of the United States Railroad Administration; through its Director General, and stated on its face that it applied to local and joint tariff of baggage rules, rates and charges applying at and between stations on the lines of the railways that were parties thereto, and from stations on said lines to destinations in the United States, Canada, Cuba, and Mexico, and the Texas & Pacific Railway was one of the lines mentioned in the tariff." The tariff was in a printed pamphlet, a copy of which was in the carrier's ticket office at Dallas, where appellee purchased the ticket mentioned above, and another copy of which was in said carrier's baggageroom where appellee had her trunk checked. Notices posted by the carrier "at and about" said ticket office and baggageroom advised the public that the copies referred to were at the places mentioned, and that information in regard thereto would be furnished to any one asking for it. Both the ticket purchased by appellee and the check given her had printed thereon that the undertaking on the part of the carrier which they respectively evidenced was "subject to tariff regulations." Among those regulations applying to baggage were the following:

"Rule 10. (a) Subject to limitations shown in rule 9 (immaterial to the question made by the record), 150 pounds of baggage, not exceeding $100 in value, may be checked without additional charge for each adult passenger."

"Rule 11. (d) Unless a greater sum is declared by a passenger and charges paid for excess value at time of delivery to carrier, the value of property belonging to, or checked for a passenger shall be deemed and agreed to be not in excess of the amount specified in rule 10, and the carriers' issuing and participating in this tariff will not accept claim for a greater sum in case of loss or damage.

"If passenger declares according to the form prescribed by checking carrier a greater value than specified in the rule mentioned in the preceding paragraph, there will be an additional charge at the rate of 10 cents for each $100 or fraction thereof above such agreed value."

At the time appellee purchased the ticket and had her trunk checked she was not asked to and did not make a declaration as to the value of the baggage, and she did not pay anything on account thereof in addition to the sum she paid for the ticket. She did not then notice, nor did the carrier call her attention to, the indorsement on the ticket and on the check that it was issued "subject to tariff regulations." She had no knowledge whatever of the existence of the tariff, and no notice thereof further than such as was furnished by the filing of same with the Interstate Commerce Commission, etc., as mentioned above.

Young & Stinchcomb, of Longview, for appellant.

Lacy & Bramlette, of Longview, for appellee.

WILLSON, C. J. (after stating the facts as above). Appellant insisted in the court below that the effect of the regulations in the baggage tariff set out in the statement above was to deny appellee a right to recover a sum in excess of $100, and insists here that the judgment so far as it is for a greater sum is excessive, and therefore erroneous. As supporting his contention appellant relies on the Act of Congress of August 29, 1916, § 1 (section 1974a, U. S. Comp. Stat.), authorizing the President, in time of war, to take possession and assume control of any system, or part of same, of transportation, and to utilize same, to the exclusion, as far as necessary, of all other traffic thereon, for the transfer of troops, war material, etc., the proclamation of the President assuming control at and after 12 o'clock noon of December 28, 1917, "of each and every system of transportation and the appurtenances thereof located wholly or in part within the boundaries of the continental United States, consisting of railroads," etc., and the Act of Congress of March 21, 1918, § 10 (section 3115¾j, U. S. Comp. Stat. 1919 Supp.), providing that during the period of federal control of common carriers the President might "initiate rates, fares, charges, classifications, regulations, and practices by filing the same with the Interstate Commerce Commission."

Appellee, on the other hand, insists that the case in its facts is not within the operation of the federal statutes and the acts of the President thereunder, and that the validity of the judgment should be determined

with reference alone to the laws of this state. The claimed inapplicability of the federal statutes and acts of the President thereunder, and applicability of the statute of this state (Vernon's Statutes, art. 708), declaring that common carriers "shall not limit or restrict their liability as it exists at common law, * * * in any other manner whatever," is of course based on the fact that the contract was not to carry the trunk from a point in one state to a point in another, but to carry same from a point in this state to another point in this state. In support of his contention appellee argues, quoting from his brief:

"That the Texas statute relied upon by him in no way conflicts with the Act of Congress, the President's proclamation, or even the Director General's order. The limitation of liability is not a part of the rate itself, and could not be as to an intrastate shipment, because it would be in violation of a state law. Limitation of liability is not within the meaning of the words 'rule, regulation or practice.' With the express provision contained in the President's proclamation that state laws should remain in full force and effect during the administration of railroads by the government, and that only in case of conflict should the federal orders be held as paramount, it is clear to us that the state statute prohibiting limiting of liability should be held effective. There is nothing in the congressional act, in the proclamation of the President, or in the orders promulgated by the Director General, either expressly or impliedly stated, that shows an intention to conflict with the state statute relied upon by us."

[1] Each point in the argument has been determined by the federal Supreme Court to the contrary of appellee's contention, it seems.

In Northern Pacific Railway Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897, it was held, quoting from the syllabus, that—

The "authority to make and enforce intrastate rates without regard to state action must be deemed to have been included in the comprehensive powers given the President by the acts of August 29, 1916, and March 21, 1918, to take over and operate the railroad transportation systems as a war emergency measure, especially in view of the provision of section 10 of the later act, expressly investing the President with the power to initiate rates by filing the same with the Interstate Commerce Commission, to be effective pending final determination by that body; and no limitation upon this all-embracing power over rates can be inferred from the provision of section 15 of that act, that nothing therein shall be construed to amend, repeal, impair, or affect the lawful police regulations of the several states."

[2] In Boston & Maine Ry. Co. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593, it was held, also quoting from the syllabus, that—

"A limitation as to the baggage liability of an interstate carrier, based upon the requirement to declare its value when more than $100, and pay an excess charge, is a regulation determinative of the rate to be charged and affecting the service to be rendered to the passenger within the meaning of the act to regulate commerce of February 4, 1887, which requires regulations of that character to be filed and posted in accordance with its provisions as a part of the carrier's tariff schedules."

Asserting that "in no event can a carrier's liability for loss due to its negligence be limited unless by estoppel," appellee argues further in support of the judgment that "the character of notice alleged and proven cannot be the basis of an estoppel." In the case last cited above (Ry. Co. v. Hooker) it was held that the rate, when made out by the carrier and filed with the Interstate Commerce Commission, is notice, and that limitations of liability not forbidden by law become, when filed, a part of the rate. We quote further from the syllabus of that case as follows:

"A regulation contained in the published tariffs of an interstate railway carrier on file with the Interstate Commerce Commission, limiting its baggage liability to $100 unless a greater value is declared and stipulated by the owner and the excess charges paid, is binding upon the passenger in case of loss of the baggage through the carrier's negligence, regardless of the passenger's lack of knowledge of or assent to such regulation, and regardless of the carrier's failure to inquire as to the value of the baggage, * * * any state law or policy to the contrary having been superseded when Congress * * * took possession of the subject of the interstate railway transportation of property."

We think the rates and regulations for the carriage of baggage initiated by the President in the exercise of power conferred on him in times of war superseded state laws in conflict with same, and that it appeared as a matter of law that appellee was not entitled to recover a sum in excess of $100. Therefore the judgment will be so reformed as to limit the recovery by her to that sum, and as so reformed will be affirmed.