## SAN ANTONIO, U. & G. RY. CO. v. NAST.*
### (No. 6712.)

(Court of Civil Appeals of Texas. San Antonio. March 22, 1922. Rehearing Denied April 19, 1922.)

1. Railroads ⊖⟹5½, New, vol. 6A Key-No. Series—Director General's baggage regulations set aside state laws.

The regulations of the federal Director General of Railroads, as to liability for baggage, set aside any state laws in conflict with them during the period of federal control as to intrastate as well as interstate traffic.

2. Carriers ⊖⟹405(4)—Passenger's ignorance of baggage liability limit does not affect force of Director General's regulations.

The baggage regulations promulgated by the federal Railway Administration were binding on all passengers, regardless of their lack of knowledge of the regulations or the failure of carrier to inquire as to the value of the baggage.

3. States ⊖⟹4—Rule as to paramount authority of federal government held to relate only to war measures.

The principle that the authority of the federal government is paramount, when exercised as to subjects which may be regulated either by the United States or by the states, governs the relations of the state and federal government only when confined to war measures in which the means for defense must prevail over everything that may interfere therewith.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by Jerome Nast against the San Antonio, Uvalde & Gulf Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded, with directions to render judgment for only the amount tendered by defendant.

Kleberg, Stayton & North, of Corpus Christi, for appellant.

J. C. Scott, of Corpus Christi, for appellee.

FLY, C. J. This is a suit for $1,060, the value of a trunk and its contents, instituted by appellee against appellant. Upon the answers to special issues submitted to a jury, judgment was rendered against appellant for $1,060.

The facts are that appellee's wife purchased a railroad ticket from Pittsburgh, Pa., to San Antonio, and had her trunk checked to San Antonio. After reaching San Antonio, she bought a ticket over appellant's line to Corpus Christi and had her trunk checked to the last-named place, without declaring its value. She was in San Antonio only a short time and surrendered her trunk check to an agent of appellant who gave her a check to Corpus Christi. Her trunk was not de-

livered and she has never seen it since it was checked by her in Pittsburgh. Appellant resisted payment of more than $100 for the trunk and contents, on the ground that the shipment of the trunk was interstate commerce, and the value not declared, and the shipment was governed by the provisions of Baggage Tariff Rule 10 of the United States Railway Administration.

[1, 2] Appellant's line of railway was, at the time that the trunk was shipped and lost, in the custody of the United States and subject to the orders of the President. Under the rules issued by authority of the United States Railway Administration, each adult passenger could check, free of charge, 150 pounds of baggage not exceeding $100, and, unless a greater sum is declared by the passenger and charges paid for excess value at time of delivery to the carrier, no claim for a greater sum than $100 would be entertained. Under Acts August 29, 1916 (U. S. Comp. St. § 1974a), and March 21, 1918 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p), the president of the United States was given the power to initiate railway rates by filing the same with the Interstate Commerce Commission, and those acts applied to intrastate shipments and superseded, during the existence of the World War, all state laws conflicting with them. Not only did the regulations as to baggage, promulgated by the Railway Administration, set aside any state laws in conflict with them, but they were binding upon all passengers, interstate or intrastate, regardless of the passenger's lack of knowledge of the regulations or the failure of the carrier to inquire as to the value of the baggage. Railway v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868, L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; Railway v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897; Payne v. McConnell (Tex. Civ. App.) 234 S. W. 942.

[3] In the Railway v. North Dakota Case, the Supreme Court of the United States held that the laws passed by Congress in 1916 and 1918 gave the United States authorities control of the railroads, with the power to fix rates and make such regulations as were deemed proper or necessary, regardless of any state laws on the subject. Chief Justice White, discussing the question, said:

"The elementary principle that under the Constitution the authority of the government of the United States is paramount when exerted as to subjects concerning which it has the power to control, is indisputable. This being true, it results that, although authority to regulate within a given sphere may exist in both the United States and in the states, when the former calls into play the constitutional authority within such general sphere, the necessary effect of doing so is that, to the extent that any conflict arises, the state power is limited, since

in case of conflict that which is paramount necessarily controls that which is subordinate."

That is recognized by this court as stating the true doctrine as to the relations of the state and federal governments, only when confined to war measures in which the means for defense of our principles and ideals must be given pre-eminence and authority over everything that may cripple or weaken them. A different rule should prevail in times of peace, and when no crying emergency demands heroic and extraordinary measures.

Following the interpretation of the war measure made by the federal Supreme Court, Chief Justice Willson of the Texarkana Court of Civil Appeals held, in the cited case of Payne v. McConnell:

"We think the rates and regulations for the carriage of baggage initiated by the President, in the exercise of power conferred on him in times of war, superseded state laws in conflict with same, and that it appeared as a matter of law that appellee was not entitled to recover a sum in excess of $100."

The passenger's ticket in that case was for transportation from Dallas, Tex., to Longview Junction, Tex., and the other facts are strikingly similar to the facts in this case.

The judgment will be reversed, and judgment here rendered that appellee recover the sum of $100 against appellant, and that appellee pay all costs of this appeal.

