PAYNE, Agent, v. WEST. (No. 6508.)

(Court of Civil Appeals of Texas. Austin. April 4, 1923. Rehearing Denied May 2, 1923.)

Railroads ⬅⬆5½, New, vol. 6A Key-No. Series —Liability for loss of intrastate shipment during federal control limited.

Acts Cong. Aug. 29, 1916 (U. S. Comp. St. § 1974a), and March 21, 1918 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p), and proclamations of the President of December 26, 1917, and March 29, 1918, conferring on the Director General of Railroads during federal control authority to promulgate freight tariffs based on value of commodities as declared by the shipper, and to provide for limitation of his liability for loss or damage thereto, authorize the Director General to prescribe rates on intrastate as well as interstate commerce, and a carrier was not liable in excess of $100 for loss of a passenger's baggage in intrastate commerce in the absence of a declaration by the passenger of value of the baggage in excess of that amount, as required by a regulation promulgated under authority of the Director General.

Appeal from Coleman County Court; L. G. Mathews, Judge.

Action by Hazel West, by next friend, against John Barton Payne, Agent. From judgment for plaintiff, defendant appeals. Reformed and affirmed.

Snodgrass & Dibrell, of Coleman, and Terry, Cavin & Mills and O. B. Wigley, all of Galveston, for appellant.

Baker & Weatherred, of Coleman, for appellee.

KEY, C. J. It is conceded that appellant's brief correctly states the nature and result of the suit as follows:

---

⬅⬆For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"On September 4, 1920, Hazel West, a minor, by her next friend, filed suit in the county court of Coleman county, Tex., against John Barton Payne, as the Agent of the President of the United States, alleging that during the time the railway companies were under federal control, and managed by and through Walker D. Hines, she purchased a ticket from the agent of Walker D. Hines, at Coleman, Tex., for transportation over the Gulf, Colorado & Santa Fé Railway Company, and other roads, from Coleman, Tex., to Denton, Tex., and paid the usual and customary price for the ticket; that for a valuable consideration she delivered to said agent at Coleman, Tex., one trunk, to be carried from Coleman, Tex., to Denton, Tex.; that she took passage on one of said company's trains; that she delivered said ticket to one of its conductors; that upon reaching Denton she was unable to locate the said trunk and had not received it; that the trunk and contents were of the value of $680.35; that the sum of $40.81 was spent in an effort to locate the trunk; that the plaintiff had been damaged in the sum of $721.16.

"On June 22, 1921, the plaintiff filed a trial amendment alleging that James C. Davis had been appointed Federal Agent in lieu of John Barton Payne. The plaintiff also set out the value of each article alleged to have been in the trunk at the time it was delivered to the carrier at Coleman, Tex., making a total sum of $664.35.

"On June 22, 1921, the defendant filed his first amended original answer containing a general demurrer, special exceptions not material to this appeal, and a general denial; and by way of further answer the defendant alleged that, if the plaintiff did purchase a ticket, and check her trunk, the ticket provided that unless a greater value is declared by a passenger, and charges paid for the excess value at the time of delivery to the carrier, the value of the property belonging to or checked for a passenger on said ticket shall be deemed and agreed not in excess of the sum of $100, and that the carrier will not be liable for or accept claim for a greater sum in case of loss or damage; that there was on file with the Interstate Commerce Commission, and duly published and promulgated under the authority of the President of the United States and Director General of Railroads, tariffs which authorized the limitation set out above, at the times alleged in plaintiff's petition; that the said tariffs were applicable to both interstate and intrastate commerce; that at the times alleged in plaintiff's petition the railroads over which the plaintiff's trunk was checked were under the control of the Director General of Railroads; that the foregoing facts were pleaded in bar of a recovery in excess of the sum of $100.

"On June 22, 1921, the plaintiff filed her first supplemental petition, including a general demurrer, a general denial, and allegation that the defendant and her next friend had no knowledge of the limitation on the ticket, or the rules and regulations issued by the President of the United States, and filed with the Interstate Commerce Commission, and that the ticket was for transportation between points within the state of Texas, and the trunk was checked between the same points, and that the said rules and regulations had no application to the ticket purchased by plaintiff or the baggage checked by the plaintiff.

"On June 22, 1921, the defendant filed his first supplemental answer, excepting to that part of the plaintiff's supplemental petition wherein the plaintiff alleged that she and her next friend had no knowledge of the rules or regulations promulgated by the President of the United States and filed with the Interstate Commerce Commission, and that said rules and regulations had no application to the matters in controversy in the suit; that the ticket was for transportation between points wholly within the state of Texas; that the President of the United States and the Interstate Commerce Commission were wholly without authority; that the limitation was an attempt on the part of the carrier to limit its common-law liabilities and its responsibility for negligence. The pleading contained a general denial.

"On June 22, 1921, the plaintiff filed her second supplemental petition, containing a general demurrer and a general denial of the allegations contained in the defendant's first supplemental answer.

"All of the defendant's exceptions were overruled by the court, and the defendant excepted to the ruling of the court.

"The case was submitted to the jury on special issues, and the court rendered judgment for the plaintiff in the sum of $475 plus costs of suit and interest from the date of the judgment.

"The defendant's amended motion to set aside the special findings of the jury, the judgment of the court, and grant a new trial because of the errors assigned was overruled, and the defendant then and there in open court excepted and gave notice of appeal. The appeal was perfected, and the case is now before this honorable court for review upon the following propositions, to wit:

"Propositions upon Which the Appeal is Predicated.

"I. Under the acts of Congress (Act approved August 29, 1916, 39 Stat. 645, and Act approved March 21, 1918, 40 Stat. 456) and the proclamation of the President (December 26, 1917, 40 Stat. 1733, and March 29, 1918, 40 Stat. 1763), the Director General of Railroads had authority during federal control to publish and file a baggage regulation limiting liability to the sum of $100 on intrastate baggage in the absence of a declaration of value and the payment of excess charges, and it was therefore error for the court to render judgment for a sum in excess of $100.

"II. The plaintiff was bound by the limitation printed on the ticket purchased and accepted by her father and used by her, and by virtue of which her baggage was checked, and it was therefore error for the court to render judgment for a sum in excess of $100."

The contract of shipment and the shipment itself in this case was made during the month of April, 1919, while the railroad in question was in the custody of and operated under the acts of Congress approved August 29, 1916 (U. S. Comp. St. § 1974a), and March 21, 1918 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, §§ 3115¾a–3115¾p), and the proclamations of the President, dated

December 26, 1917 (40 Stat. 1733) and March 29, 1918, (40 Stat. 1763), which conferred upon the Director General of Railroads the authority, during such federal control, to promulgate, publish, and file freight tariffs providing varying rates for the transportation of commodities, based upon the value of the property to be transported as declared by the shipper, and to provide therein for limitation of his liability because of loss of or damage thereto.

Construing the statute referred to, the Supreme Court of the United States has 'held that the act of Congress which was passed for the purpose of aiding the government of the United States in the prosecution of the war in which it was engaged with the government of Germany authorized the Director General of Railroads to prescribe railroad rates on intrastate as well as interstate commerce, and that such rates when so prescribed superseded those fixed by state laws.

Although the shipment involved in this case was an intrastate shipment, it falls within the purview of the decisions referred to; and therefore we hold that the trial court erred in not limiting the defendant's liability as prescribed by the contract of shipment. The cases referred to are Northern Pac. Ry. Co. v. North Dakota, 250 U. S. 135, 39 Sup. Ct. 502, 63 L. Ed. 897; Boston & Maine R. R. v. Hooker, 233 U. S. 97, 34 Sup. Ct. 526, 58 L. Ed. 868; L. R. A. 1915B, 450, Ann. Cas. 1915D, 593; Louisville & Nashville Ry. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665; Tex. & Pac. Ry. Co. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011; Penn. R. R. Co. v. International Coal Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315; Payne, Agent, v. McConnell (Tex. Civ. App.) 234 S. W. 942; San Antonio Ry. Co. v. Nast (Tex. Civ. App.) 240 S. W. 596. The last two cases cited were decided by Courts of Civil Appeals in this state; and the Supreme Court has granted a writ of error in each.

We have withheld a decision in this and two other cases awaiting a decision by the Supreme Court in the cases referred to; but, as there is some difference in those cases and the case at bar, and as it is uncertain when the former will be decided, we have concluded to proceed with a decision of this case.

In our opinion the appellant's contention must be sustained, and plaintiff's recovery limited to $100; and therefore the judgment of the trial court is reformed so as to allow the plaintiff a recovery of only that much, and as thus reformed the judgment is affirmed. This judgment wil bear interest at 6 per cent. per annum from date of judgment in the court below. Cost of appeal is taxed against appellee.

Reformed and affirmed.