PUBLIC SERVICE COMMISSION, SECOND DISTRICT, Respondent, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Railroads — Federal Control Act — state authority and regulations as to intrastate commerce merely suspended thereby — when suspension ceased, on return of roads, charter limitations of fare revived with all of original force — direction of public service commission to railroad to restore limited rate of fare a change "by state authority" within meaning of act of congress directing restoration of railroads to their owners and that tariffs should continue until "changed by state authority."

1. Under the Federal Control Act, by authority of which the president entered into "possession, use, control and operation" of railroads within this state, any regulations the state might have made as to the operation of the roads; any powers it possessed over intrastate traffic; any contract obligations vested in it, were merely suspended while the general government was in possession.

2. Congress was well within its rights when it provided that the tariffs in force on February 29, 1920, should continue until thereafter changed by state or federal authority, respectively, or pursuant to authority of law, and in no case should be reduced before September 1, 1920, without the approval of the interstate commerce commission.

3. By its charter and by section 57 of the Railroad Law (Cons. Laws, ch. 49), the rate for way passengers on the defendant's railroad between Albany and Buffalo is limited to two cents a mile. That limitation has not been destroyed by the federal control. It was temporarily suspended but when the suspension ceased, it revived with all of its original force. The suspension ceased when the rate fixed by the president was "changed by state authority." That authority over intrastate rates is the public service commission and when that commission, after a hearing, directed the defendant to restore the two-cent rate on and after September 1, 1920, the war powers of the United States ceased.

4. No opinion is intimated in regard to any questions that may arise by reason of an order made by the interstate commerce commission, while the appeal herein was pending, directing the defendant and other railroads to desist from practicing undue discrimination against interstate and foreign commerce, found to exist, and to exact

fares for intrastate traffic equal to fares established by the commission for interstate traffic; but the proceeding is remitted to the Special Term, with the right to any of the parties to apply thereto for the purpose of opening the proceeding and, if such application be granted, then to offer in evidence the proceedings before the interstate commerce commission, the order made therein, the findings and evidence upon which the same were based, and any other evidence bearing upon the order of the interstate commerce commission which the parties or any of them may see fit to offer, subject to any objection that may be made.

*Public Service Comm.* v. *N. Y. C. R. R. Co.*, 193 App. Div. 615, affirmed

(Argued November 22, 1920; decided December 10, 1920.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 9, 1920, which reversed an order of Special Term denying a motion for the enforcement of an order of the public service commission directing the defendant to restore the passenger rate of two cents per mile on its lines within the state, and granted the said motion.

The facts, so far as material, are stated in the opinion.

*Robert E. Whalen, Charles C. Paulding, William L. Visscher* and *Alexander S. Lyman* for appellant. The three-cent rate fixed by the director-general is still in full force and effect. (*N. P. Ry. Co.* v. *North Dakota,* 250 U. S. 135; *D. C. Tel. Co.* v. *State,* 250 U. S. 163; *Kansas* v. *Burleson,* 250 U. S. 188; *Burleson* v. *Dempcy,* 250 U. S. 191; *MacLeod* v. *N. E. Tel. & Tel. Co.,* 250 U. S. 195; *Northern Pacific Ry. Co.* v. *Washington,* 222 U. S. 370; *Tap Line Cases,* 234 U. S. 1; *United States* v. *Coca Cola Co.,* 241 U. S. 265; *C. P. R. R. Co.* v. *California,* 162 U. S. 91; *S. P. R. R. Co.* v. *U. S.,* 183 U. S. 519.)

*Ledyard P. Hale* and *Joseph A. Kellogg* for Public Service Commission, respondent. The termination of federal control reinstates in force the charter and statu-

tory provisions unimpaired in vitality. (*Tua* v. *Carrier*, 117 U. S. 201; *Matter of Rahrer*, 140 U. S. 545; *Butler* v. *Gorely*, 146 U. S. 303; *Minnesota Rate Cases*, 230 U. S. 352; *Ex parte Spias*, 123 U. S. 131; *Martin* v. *Hunter*, 1 Wheat. 304; *Buffington* v. *Day*, 11 Wall. 113; *P. S. Comm.* v. *W. S. R. R. Co.*, 206 N. Y. 209.)

*Charles D. Newton, Attorney-General* (*Edward G. Griffin* of counsel), for respondent. The two-cent fare having been agreed upon in a charter contract, it is immaterial whether the fare is compensatory or not. Congress should not be charged with having violated a charter and is without power to impair the obligation of this contract interminably under its war powers. (*Slaughter House Cases*, 16 Wall. 36; *Cleveland* v. *C. C. Ry. Co.*, 194 U. S. 517; *C. R. & P. Co.* v. *Columbus*, 249 U. S. 399; *Brooks-Scanlon Co.* v. *R. R. Comm.*, 251 U. S. 396; *G. R. & I. Ry. Co.* v. *Osborn*, 193 U. S. 7; *Matter of Quinby* v. *P. S. Comm.*, 223 N. Y. 24; *N., etc., R. R. Co.* v. *Pendleton*, 156 U. S. 667; *Hepburn* v. *Griswold*, 8 Wall. 603; *Sinking Fund Cases*, 99 U. S. 700; *St. Anthony Falls Water Power Co.* v. *St. Paul Water Comrs.*, 168 U. S. 372; *Legal Tender Cases*, 2 Wall. 457; *Loan Association* v. *Topeka*, 20 Wall. 655; *Fletcher* v. *Peck*, 6 Cranch, 87.) The appellant must either abide by its whole charter or abandon it, and seek federal incorporation. Congress cannot dissolve one binding part of the charter and leave appellant the benefits of the rest. (*D. C. Tel. Co.* v. *South Dakota*, 250 U. S. 163; *L. S., etc., R. R. Co.* v. *Smith*, 173 U. S. 685; *M. G. Co.* v. *P. S. Comm.*, 225 N. Y. 93; *R. R. Co.* v. *Maryland*, 21 Wall. 456; *Horn Silver Co.* v. *New York*, 143 U. S. 305; *Raritan Co.* v. *Delaware Canal Co.*, 18 N. J. Eq. 546; *Quinby* v. *P. S. Comm.*, 223 N. Y. 44; *Osborne* v. *Florida*, 164 U. S. 650; *Pullman Co.* v. *Kansas*, 216 U. S. 54; *Northern Securities Cases*, 193 U. S. 197.) The construction of the Transportation Act sought by the appellant gives the war power indefinite operation. No power

under the commerce clause is being exercised under the section of the Transportation Act here presented. (*Ruppert* v. *Caffey*, 251 U. S. 264; *H. & T. Ry. Co.* v. *United States*, 234 U. S. 342.)

Andrews, J.   By its charter and by section 57 of the Railroad Law (Cons. Laws, ch. 49), the rate for way passengers on the New York Central railroad between Albany and Buffalo is limited to two cents a mile. Because of the Transportation Act of 1920 the company exacts and claims the right to exact a greater sum.   After a hearing, on June 15, 1920, the public service commission directed the defendant to restore the two-cent rate on and after September 1, 1920.   The latter refused to comply with this order and proceedings were instituted in the Supreme Court by the commission to obtain relief. These proceedings are now before us for review.

On December 28, 1917, under authority of an act of congress the president entered into " possession, use, control and operation " of the New York Central railroad and later fixed a rate of fare upon that road, for all passengers, at three cents a mile.   This action was not justified by any of the ordinary rules of law.   It can be sustained solely as the exercise of the war powers of the United States.   And these powers are not limited by these ordinary rules.   They are not bounded by any specific grant of authority.   They are not unlike what in the states we call the police power, but the police power raised to the highest degree.   They are such powers as are essential to preserve the very life of the nation itself. When requisite to this end the liberty of the citizen — the protection of private property — the peace-time rights of the states must all yield to necessity.

That the Federal Control Act was a proper exercise of these powers — that as incident to the control of the roads, the question of fares intra as well as interstate was lodged exclusively in the president, has been held by the

Supreme Court. (*Northern Pacific Ry. Co.* v. *North Dakota,* 250 U. S. 135.) The owners, however, did not lose their property. Their rights over it were suspended. And so as to the states. Any regulations they might have made as to the operation of the roads; any powers they possessed over intrastate traffic; any contract obligations vested in them, were merely suspended while the general government was in possession.

The time came when the necessity — the basis of the war power — ceased. The roads were to be returned to their owners, the states were once more to exercise their accustomed authority. Yet the process of re-adjustment was complex. And the power to seize the roads carried with it such reasonable power as was needed to bring about that re-adjustment in an orderly and equitable manner. The government had operated competing roads as part of one system. It had distributed cars as its needs required. It had increased the wages of employees. It had fixed the rates of fare both interstate and intrastate. The public good required that the normal state of affairs should be re-established with the least possible disturbance. Congress was well within its rights, therefore, when it provided that the tariffs in force on February 29, 1920, should continue until thereafter changed by state or federal authority, respectively, or pursuant to authority of law, and in no case should be reduced before September 1, 1920, without the approval of the interstate commerce commission.

Obviously the purpose of this clause so far as the states were concerned was to maintain fares until September first and thereafter until, in view of possible new conditions, affirmative action was taken by the state authorities. The thought was that in many instances local rates had been fixed by local commissions with a view to costs and earnings as they existed prior to 1917. Let them act if they desired to restore the old rates. It is equally obvious that when such action was taken is

immaterial if the actual reduction did not take effect until September first. In a case like that of the defendant where the rate is a condition of the charter or in a case where the rate is fixed by statute, there would seem to be less purpose in such a provision. Possibly it seemed wise in all cases to give the roads formal warning of reversion to the old state of affairs and an opportunity to make and file the necessary tariff schedules. In any event, Congress made no exception to the general rule.

Therefore, the New York Central Railroad Company might continue existing rates until some change was required by the state or federal authorities or pursuant to authority of law; or, as we construe the language as it affects New York, by the action of the interstate commerce commission, or the public service commission, within the limits of their respective powers, or by the action of some body having jurisdiction over the railroad and the subject-matter of rates. Such action, however, has now been taken. As we have said, the obligation of the defendant to carry way passengers for two cents a mile has not been destroyed. It was temporarily suspended. It was always subject to this possibility under the war power, if it became necessary. But when the suspension ceases, it revives with all its original force. The suspension does cease, in the language of the statute, when the three-cent rate is " changed by state authority." That authority over intrastate rates is the public service commission. Any charge made by a public service corporation in excess of that allowed by law is prohibited. (Public Service Commissions Law [Cons. Laws, ch. 48], sec. 26.) And if the commissioners shall after a hearing be of the opinion that any fare demanded is in violation of any provisions of law, it may determine the proper fare to be thereafter charged. (Sec. 49.) This is precisely what the commission has done. True the defendant hitherto was authorized to charge three cents a mile for local fares between Albany and Buffalo. In a sense that fare " was

allowed by law; " but the law our statute refers to is our law still in existence, having all its ancient force when the war powers of the United States cease. And they do cease when our commission acts.

The Special Term, therefore, should have granted appropriate relief to the respondent, and we should now affirm the action of the Appellate Division, unless we are to be controlled by a further consideration. By stipulation there have been placed before us an order made on November 13, 1920, by the interstate commerce commission directing the New York Central and other railroads to desist from practicing undue discrimination against interstate and foreign commerce, found to exist, and to exact fares for intrastate traffic equal to fares established by the commission for interstate traffic; the opinion and findings of the commission on which this order was based, and the evidence taken before it. Although no statement is made as to the purpose of these papers, probably the theory of the appellant is that this order supersedes all prior orders made by the plaintiff, and even if the order of the Appellate Division was right at the time it was made, we should not now affirm it, and so in effect direct the defendant to do what is no longer in its power.

These papers were not and could not have been considered by the courts whose orders we review. They were not in existence when they acted. The question arises how far we should make them a basis for deciding various questions.

The New York Central Railroad Company is engaged in interstate as well as in intrastate commerce. To the interstate commerce commission is rightfully confided the question of interstate fares and tariffs. Primarily and independent of any other consideration it has not and it cannot have any control over intrastate fares as such. That is a matter for the state authorities. Except under the war powers of the United States any attempt to vest

in it jurisdiction over what are solely and exclusively intrastate rates would fail. It may be that under the guise of fixing such rates, the state may not discriminate against interstate commerce. To permit it would make the state supreme over all traffic. It would nullify the power over interstate commerce confided by the Constitution to the national government. If such discrimination exists in fact, the commission may have the power to correct the evil, even if to effect the result it requires a state rate to be so raised as to equal the rates fixed by it for the like interstate service. (*Houston, E. & W. T. Ry. Co.* v. *U. S.*, 234 U. S. 342; Transportation Act of 1920, sec. 416.)

The interstate commerce commission has found that as regards intrastate rates in New York undue discrimination against interstate commerce does exist. From their opinion it may be argued that this finding is based in part at least upon the theory that it may establish a scale of intrastate rates sufficiently high to enable the carrier to earn a fair return upon combined inter and intrastate business.

The authority of the commission as now exercised has been widely questioned. Yet whether its action was justified by such a decision as *Houston, E. & W. T. Ry. Co.* v. *U. S.* (234 U. S. 342) or by section 416 of the Transportation Act; how far and when intrastate rates may be regulated by federal authority; the effect of the order of the commission; whether in making it the commission acted in a quasi judicial capacity (*People ex rel. C. P., N. & E. R. R. R. Co.* v. *Willcox*, 194 N. Y. 383) or purely as a branch of the legislature (*Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210; *Louisville & N. R. R. Co.* v. *Garrett*, 231 U. S. 298; *Wadley So. Ry. Co.* v. *Georgia*, 235 U. S. 651); whether if it acted in the former capacity its determination that facts existed upon which its jurisdiction depends may be attacked collaterally (*Ferguson* v. *Crawford*, 70 N. Y. 253, 265; *People ex rel. Tweed* v. *Liscomb*, 60 N. Y.

559, 568; *O'Donoghue* v. *Boies*, 159 N. Y. 87, 99; *People's Sav. Bank* v. *Wilcox*, 15 R. I. 258; *Noble* v. *Union River L. R. R. Co.*, 147 U. S. 165); what is the effect of its findings if it acted in its legislative role; whether any authority under sections 416 and 422 is given the commission over intrastate rates under the theory of a fair return for the combined business of a carrier — none of these questions were presented to us either orally or in writing — still less to the Special Term or the Appellate Division.   Other questions as important may exist.   We are unwilling to pass upon any of such questions presented upon a record made, in a material part at least, by oral stipulations in this court.   We intimate no opinion with regard to any of them.   We leave the matter entirely open, affirm the order and remit the proceeding to the Special Term of the Supreme Court, with the right to any of the parties to apply thereto for the purpose of opening the proceeding and, if such application be granted, then to offer in evidence the proceedings before the interstate commerce commission, the order made therein, the findings and evidence upon which the same were based, and any other evidence bearing upon the order of the interstate commerce commission which the parties or any of them may see fit to offer, subject to any objection that may be made.   The order should be affirmed, with costs.

HISCOCK, Ch. J., COLLIN, HOGAN, MCLAUGHLIN and CRANE, JJ., concur; CHASE, J., dissents except from provision relating to modification or vacation of order.

Order affirmed.