JOSEPH O'BOYLE, Plaintiff, *v.* PENNSYLVANIA RAILROAD COMPANY, Defendant.

Municipal Court of the City of New York, Borough of Brooklyn, Fifth District, May, 1922.

**Contracts — conditions imposed by government while operating railroads in regard to towage contracts — letters of plaintiff refusing conditions ineffective when he later accepts towage — when conditions inure to benefit of railroad company after return of roads.**

The United States railroad administration wrote plaintiff, a lighterage and transportation corporation, three letters (September 2, 1918, June 9, 1919, and June 18, 1919) all substantially to the same effect, stating the conditions under which it would accept boats for tow, and the plaintiff wrote as many replies refusing in each instance to agree to the conditions named, which, by the terms of all the letters of the said railroad administration applied to all work accepted and performed by the tugs owned, employed or chartered by the defendant, and were as follows: "All towing is done at the risk of the tow. Neither we nor the tugs employed in the service nor the owners shall be responsible for any damage done to the tow through negligence, and the masters and crews of tugs in the performance of the towage service shall become the servants of, and identified with the vessel or the craft towed, whether singly or with other vessels owned by you and in possession of charterers, and to the shifting of vessels in and around piers and in slips." Nearly a year after the last letter of said railroad administration to plaintiff, one of his barges, while being towed by one of defendant's tugs pursuant to an oral order given by plaintiff, was damaged through the negligence of those in charge of the tug. Upon directing judgment for the dismissal of the complaint upon the merits in an action for damages, *held:*

The railroad administration had the right to impose the conditions named in its letters and the plaintiff not having made his refusal to agree to said conditions a part of his order to defendant to tow the barge, is presumed to have accepted the conditions and to have waived his objections thereto.

The notice contained in the administration's letter of June 9, 1919, was one of the " regulations and practices " referred to and continued in effect by section 208 (a)

of the Transportation Act of February 28, 1920, and inured to the benefit of the defendant and was available as a defense to the action, and the legal effect of said letter was not destroyed by the letter of plaintiff in reply thereto.

SUBMISSION of controversy upon an agreed statement of facts.

*Macklin, Brown, Purdy & Van Wyck (William Van Wyck,* of counsel), for plaintiff.

*Burlingham, Veeder, Masten & Fearey (H. H. Breland,* of counsel), for defendant.

LAW, J. On or about June 10, 1919, plaintiff received the following letter:

" UNITED STATES RAILROAD ADMINISTRATION,
" W. G. MCADOO, DIRECTOR-GENERAL OF RAILROADS, PENN-
SYLVANIA RAILROADS — EASTERN LINES
" Office foot of Cortlandt Street,
" NEW YORK, N. Y., *June 9th,* 1919.

" GENTLEMEN.— We beg to inform you that it has become necessary for us to cease being responsible for vessels while in tow of our tugs. On and after September 10th, 1918, the following conditions will apply to all work accepted and performed by tugs owned, employed or chartered by the Pennsylvania Railroad Company:

" All towing is done at the risk of the tow. Neither we nor the tugs employed in the service nor the owners shall be responsible for any damage done to the tow through negligence, and the masters and crews of tugs, in the performance of the towage service shall become the servants of, and identified with the vessel or the craft towed, whether singly or with other vessels owned by you and in possession of charterers, and to the shifting of vessels in and around piers and in slips.

" Very truly yours,
" D. C. CHASE,
" *Sup't. Steam Towing.*"

In response thereto plaintiff wrote the following letter which was received on or about June 18, 1919:

" O'BOYLE LIGHTERAGE & TRANSPORTATION CO.
" FREIGHT CONTRACTORS
" No. 1 BROADWAY
" NEW YORK, *June 16th,* 1919.
" PENNSYLVANIA RAILROAD CO.
" Ft. Cortlandt Street,
" New York City:
" Attention: Mr. LOUIS SAYER, *Acting Boatmaster.*
" DEAR SIR.— We are in receipt of your communication of 9th

instant wherein you state that it has become necessary for you to cease being responsible for damages sustained to vessels while in tow and in charge of your tugs.

" You say in this letter that on and after September 10th, 1918, your towing conditions will be such that you will assume no responsibility for vessels damaged when in charge, employed or chartered by the Pennsylvania Railroad Company.

" Please be advised that we do not agree to the above, and will hold your tugs responsible for any damage done, while in charge of your tugs as heretofore.

" This applies to any and all boats owned, chartered or operated by this concern. Yours very truly,

" O'Boyle Lighterage & Transportation Co.,

" Jos. F. O'Boyle,

" *Manager.*"

On or about September 4, 1918, the plaintiff received a letter dated September 2, 1918, substantially identical with the above-quoted letter of June 9, 1919, and the plaintiff under date of September 4, 1918, replied substantially to the same effect as in the above-quoted letter of June 16, 1919. On or about June 19, 1919, the plaintiff received a letter from the railroad administration dated June 18, 1919, which acknowledges the receipt of the plaintiff's letter of June 18, 1919, and states as follows: " We must courteously re-assert that the course as outlined in our letter of June 9th is that which will be followed out by us."

Under date of June 21, 1919, the plaintiff replied to the last named letter reasserting his refusal to accept such terms in substantially the same form as in his letter of June 16, 1919.

On March 17, 1920, the plaintiff gave an oral order to defendant to tow plaintiff's barge *Hazel T. Hinds*, and while being towed by one of defendant's tugs pursuant to said oral order given by the plaintiff said barge *Hazel T. Hinds* was on the 17th day of March, 1920, damaged by reason of the negligence of those in charge of defendant's tug while said tug was engaged in towing the plaintiff's said barge. In consequence of defendant's negligence aforesaid plaintiff sustained damage amounting to the sum of $908, with interest thereon from the 17th day of March, 1920.

Assuming that the defendant is entitled to the full benefit of the legal effect of the letter of June 9, 1919, sent out by the railroad administration and that the plaintiff's letter of June 16, 1919, was ineffective to destroy such legal effect, it would seem very clear that the letter of June ninth did form part of the contract under which plaintiff's barge was being towed at the time of the accident

and that the defendant was relieved of liability for the damage. *Ten Eyck* v. *Director-General of Railroads*, 267 Fed. Rep. 974. Then there are two questions to be considered, *first*, whether the effect of the letter of June ninth continued after the termination of federal control and inured to the benefit of the defendant, and, *secondly*, whether the plaintiff's letter of June sixteenth operated to destroy the legal effect which the letter of June ninth would otherwise have had.

As to the first question I think the practical logic of the situation leads inevitably to the conclusion that the notice contained in the letter of June ninth continued to be effective after the Transportation Act of February 28, 1920, took effect, as a notice of the conditions on which the defendant would accept work to be performed by its tugs. It was obviously the purpose and intent of the congress to provide for the return of the railroads to the owners with the least possible disturbance and to avoid the confusion and even chaos that would result in suddenly terminating federal control without even a temporary continuance of the regulations and practices established by the director-general. *Public Service Comm.* v. *N. Y. C. R. R. Co.*, 230 N. Y. 149. If the plaintiff's contention is correct, the defendant, had it desired to continue the conditions named in the letter of June ninth, could not have given a notice effective for such purpose until March 1, 1920, and such notice would not have been effective until actually received by the plaintiff. When it is considered that the regulation set forth in the letter of June ninth was probably only one of thousands of regulations established by the director-general in the administration of the business of the railroads and when we contemplate the confusion that would inevitably have arisen from the efforts of the roads to make new regulations immediately effective, we can more readily understand the purpose of section 208(a) of the Transportation Act of February 28, 1920 (41 Stat. L. 456, as amd.), as follows: " All rates, fares, and charges, and all classifications, regulations, and practices, in any wise changing, affecting, or determining, any part or the aggregate of rates, fares, or charges, or the value of the service rendered, which on February 29, 1920, are in effect on the lines of carriers subject to the Interstate Commerce Act, shall continue in force and effect until thereafter changed by State or Federal authority, respectively, or pursuant to authority of law; but prior to September 1, 1920, no such rate, fare, or charge shall be reduced, and no such classification, regulation, or practice shall be changed in such manner as to reduce any such rate, fare, or charge, unless such reduction or change is approved by the Commission."

I think the notice contained in the letter of June ninth is one of the "regulations and practices" referred to and continued in effect and that the notice did inure to the benefit of the defendant and is available for defense in this action.

As to the second question presented, it seems to be quite clear that the plaintiff's letter of June sixteenth was ineffective to destroy the legal effect of the railroad administration's letter of June ninth. I agree with the views expressed in the opinion of Judge Ward in the case of *McCaffrey* v. *Director-General of Railroads*, in the United States District Court for the Southern District of New York, decided February 27, 1922, but not yet reported. I think Judge Ward's reasoning is unanswerable. That any other conclusion would lead to manifest absurdity is well illustrated by the correspondence in the instant case. Except for purposes of illustration the railroad administration's letter of June 18, 1919, and plaintiff's letter of June 21, 1919, in reply thereto, may be ignored, inasmuch as they merely reaffirm the positions theretofore taken by the respective parties and, therefore, left the status as it was before. But let us assume the plaintiff's contention that his letter of June sixteenth nullified the legal effect of the letter of June ninth. Then the letter of June eighteenth reasserted the conditions under which the railroad administration would accept boats for tow and if this letter had gone unanswered it would, in the circumstances of the case, have constituted a part of the contract between the parties. In other words, the plaintiff's letter of June twenty-first was deemed necessary to nullify the effect of the letter of June eighteenth. If a new letter reasserting the conditions insisted on had been sent by the railroad administration, a new reply would have been necessary to nullify its effect, and so on *ad infinitum*. Thus we are forced to the absurd conclusion that the defendant's liability would depend on the mere circumstance of which side happened to write the last letter before the accident. In the instant case this very rivalry in letter-writing seems to have been resorted to. The railroad administration wrote plaintiff three letters (September 2, 1918, June 9, 1919, and June 18, 1919) all substantially to the same effect, and the plaintiff found it necessary to write as many replies refusing in each instance to agree to the conditions named. Would there be any question here to consider, had the railroad administration written the last letter?

The correct and consistent theory about this matter is quite clear. The railroad administration had the right to impose the conditions named in its letters, and if it notified the plaintiff of such conditions and the plaintiff thereafter gave an order to the defendant to tow plaintiff's barge, and did not make his refusal

to agree to the said conditions a part of his order, he is presumed to have accepted the conditions and to have waived his objections thereto. A very different situation would have been created had the plaintiff stated to defendant, at the time he gave the oral order to defendant to tow his barge, that the order was given on condition that the defendant waive the conditions named in the letters of the railroad administration. If in such circumstances the defendant had accepted the order of the plaintiff it would be deemed to have waived the conditions previously insisted upon.

The defendant is entitled to judgment dismissing the complaint on the merits.

Judgment accordingly.