## THE P. R. R. NO. 32.

(District Court, S. D. New York.  April 10 1923.)

Towage &⩵3—Railroad Administration's notice, refusing to be liable for tows, held not to inure to tug owner on termination of federal control (Transportation Act 1920, § 208[a], being Comp. St. § 10071¼d).

Under Transportation Act 1920, § 208(a), being Comp. St. § 10071¼d, notice from United States Railroad Administration to charterer that it would not be responsible for vessels "while in tow of our tugs," held not to inure to benefit of railroad owning tugs, on termination of federal control.

In Admiralty. Libel by the New York & Hastings Steamboat Company against the steam tug P. R. R. No. 32. On exceptions to petition by claimant to implead the United States and the National Conduit & Cable Company under admiralty rule 56. Exceptions sustained, and petition dismissed.

Burlingham, Veeder, Masten & Fearey, of New York City (A. Howard Neely, of New York City, of counsel), for petitioner.

Sullivan & Cromwell, of New York City (Emery H. Sykes, of New York City, of counsel), for impleaded respondents.

AUGUSTUS N. HAND, District Judge. This libel was filed by the New York & Hastings Steamboat Company to recover damage to the barge Manhattan while in tow of the tug P. R. R. No. 32, on July 23, 1920. The Pennsylvania Railroad Company, the claimant of the tug, filed a petition under rule 56 in admiralty to bring into the suit the National Conduit & Cable Company, and the matter comes up on exceptions by the latter to the sufficiency of this petition. It is alleged in the petition that on September 2, 1918, while the Pennsylvania Railroad Company was under federal control, a notice was sent to the National Conduit & Cable Company, Inc., by the United States Railroad Administration, informing the National Conduit & Cable Company that it had become necessary to cease being responsible for vessels "while in tow of our tugs, and after September 11, 1918, the following conditions will apply to all work accepted and performed by tugs under employ or chartered by the Pennsylvania Railroad Company."

"All towing is done at the risk of the tow. Neither we, nor the tugs employed in the service, nor the owners, shall be responsible for any damage done to the tow through negligence, and the masters and crews of tugs in the performance of the towage service shall become the servants of and identified with the vessel or the craft towed, whether singly or with other vessels owned by you and in possession of charterers, and to the shifting of vessels in and around piers and in slips."

After federal control terminated, the Pennsylvania Railroad Company and respondents impleaded entered into an oral contract for the towing of the barge Manhattan from Forty-Eighth street, North River, to South Amboy, N. J.; the barge Manhattan

being then under charter to the respondents impleaded. The Pennsylvania Railroad now contends that the contents of the notice of September 2, 1918, by the Director General, became a part of the towing contract between it and the respondents impleaded, and that at the time the Manhattan was damaged on July 23, 1920, the barge was being towed at her own risk. In the case of The Kittie Ten Eyck v. Director General of Railroads (C. C. A.) 267 F. 974, such a notice from the Director General as I have referred to was held to relieve him from liability for damages inflicted upon a barge while the tug was operated by the Director General.

The question in this case is whether the notice of September 2, 1918, can be regarded as inuring to the benefit of the Pennsylvania Railroad Company. The Transportation Act, approved February 28, 1920 (41 Stat. 456), provided that the railroads should be returned to their owners and federal control should cease March 1, 1920. Section 208 (a) of that act (Comp. St. § 10071¼d) is as follows:

"All rates, fares, and charges, and all classifications, regulations, and practices, in any wise changing, affecting, or determining any part or the aggregate of rates, fares, or charges, or the value of the service rendered, which on February 29, 1920, are in effect on the lines of carriers subject to the Interstate Commerce Act, shall continue in force and effect until thereafter changed by state or federal authority, respectively, or pursuant to authority of law; but prior to September 1, 1920, no such rate, fare, or charge shall be reduced, and no such classification, regulation, or practice shall be changed in such manner as to reduce any such rate, fare, or charge, unless such reduction or change is approved by the Commission."

I do not regard the provision or notice relieving the Director General from liability for accidents as a rate, fare or charge, or classification or regulation affecting the aggregate of rates, fares, charges, or the value of the service rendered, within the meaning of the statute. It is argued that it was a "practice" but there is nothing before me showing that it was a general practice, equivalent to a departmental regulation. Indeed, it was stated at the argument that different corporations made different agreements with the Director General in respect to exemption from liability.

The Appellate Term of the Second Judicial Department seems to have reached the same conclusion as the foregoing in a decision rendered April 2, 1923, in the case of O'Boyle v. Pennsylvania Railroad Company, 118 Misc. Rep. 660, 195 N. Y. S. 240, reversing the judgment of Judge Law in the Municipal Court, Fifth District, Borough of Manhattan.

The exceptions are sustained, and the intervening petition is dismissed.