

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN        AUSTIN 11, TEXAS



ATTORNEY GENERAL

Honorable Penrose B. Metcalfe, Chairman
Honorable Fred Mauritz, Member
Committee on Highways and Motor Traffic
Texas Senate

Gentlemen:                     Opinion No. O-5165
                                    Re: Whether obedience to Office
                                     of Defense Transportation orders
                                     by truck operators would be a
                                     violation of The Texas Motor
                                     Carrier Act. (V.A.C.S. 911b
                                     and V.R.P.C. 1690b.)

By letter Senator Mauritz has asked the following questions:

"Attached hereto is a motor vehicle lease form filled out to cover a possible transaction. Such lease may involve a longer or shorter period of time.

"Is the fulfillment of this contract a violation of the Motor Carrier Act of Texas, on the part of either party to the contract?

### "EXAMPLE

"'A' is in the wholesale grocery business, and does not own any trucks. He leases one or more trucks from 'B' (who is not a carrier for hire) to be used wholly in the transportation of his own merchandise, and under the control specified in the above mentioned lease contract.

"Is the legality of such a contract in any way affected by the circumstance that:

      " 1.    'A' does own no trucks, or
      " 2.    'A' does own a number of trucks,
               but finds it necessary to lease
               additional trucks to handle
               his business.

"'A' is in the wholesale grocery business and own a truck. He transports a load of merchandise from his place to destination 'Y'. Under existing rules issued by the Office of Defense Transportation, he is not allowed to move an

empty truck back to his place of business. He is required, under such regulations, to seek a return load, leasing his truck to 'another person', who has merchandise to move to or in the direction of the place of business from which the truck moved; hence, the need for leases involving only a short-term use of truck.

"Is the legality of such a lease made in good faith, and conforming to ODT regulations, affected by the short period of time specified in contract?

"Is a short-term lease of this character forbidden by the Motor Carrier Act of Texas?

"Is the legality of such lease contract affected by the circumstance that:

1. Lessee is a shipper who owns no trucks.
2. Lessee is a shipper who owns trucks (private truck owner) but needs additional equipment.
3. Lessee is a carrier for hire."

By letter of March 29, 1943, Senator Metcalfe, Chairman of the Senate Committee on Highways and Motor Traffic, wrote us as follows:

"Senator Mauritz, author of S. C. R. No. 23, has filed with you a question as to whether certain lease contracts made by certain motor carriers would be in violation of the Motor Carrier Act. This resolution has been considered by the Committee on Highways and Motor Traffic, and an opinion would be appreciated."

The questions will be answered in the light of S. C. R. No. 23 now pending which reads:

"By Mauritz.                                    S. C. R. No. 23.

"(In the Senate.-March 2, 1943, read first time and referred to Committee on State Affairs; March 2, 1943, rereferred to Committee on Highways and Motor Traffic; March 17, 1943, reported favorably.)

"SENATE CONCURRENT RESOLUTION

"BE IT RESOLVED by the Senate of the Legislature of Texas, the House of Representatives concurring, that

"Whereas the Office of Defense Transportation of the United States, for the purpose of conserving rubber and motor equipment, has promulgated General Order O.D.T.

No. 17 which provides, among other things, in Part 501, Subpart K, Section 501.69, as follows:

"'Sec. 501.69. (a) No motor carrier shall operate any motor truck in over-the-road service unless it is loaded to capacity, except as follows:

"'(2) On and after September 1, 1942, each motor carrier and its representatives, including the representatives, in immediate control and possession of the truck, shall endeavor in good faith prior to its departure from any point when empty to lease or rent such truck consistent with any prior commitments involved in the use of said truck en route, to another person for the transportation of property. . .'

"NOW THEREFORE, BE IT RESOLVED that Chapter 314, General Laws of the State of Texas, Forty-first Legislature, Regular Session, and amendments thereto, commonly known as the Motor Carrier Act of Texas, shall not be construed, for the period of time that the United States is engaged in war, or the Federal Government's Orders remain in force as to leasing of motor vehicles, to mean that it is a violation of said Act nor any amendment thereof for a private truck owner to lease or rent his truck to another person in compliance with said General Order O.D.T. No. 17, and that where one private truck owner has leased or rented his truck to another person in compliance with said General Order O. D. T. No. 17 and said truck is used and operated by said lessee, neither the lessor nor the lessee shall be deemed to have violated said Motor Carrier Act nor any amendment thereof, and that neither the lessor nor the lessee in such case shall be deemed to be a common carrier or contract carrier under said Motor Carrier Act, as amended, regardless whether under the terms of the lease contract the lessor does or does not furnish the driver for the truck and regardless whether the lessor does or does not agree, in whole or in part, to maintain and service the truck, provide gas, oil, tires, and pay other expenses necessary to operate the truck while the same is leased to lessee.

"BE IT FURTHER RESOLVED, That this resolution be published to the Railroad Commission of Texas, the law enforcement officers and the Courts of this State."

S. C. R. 23 is written for the praiseworthy and patriotic purpose of preventing the enforcement of the Texas Motor Act in such a way as to interfere with the order of the Office of Defense Transportation to save rubber, motortruck equipment and manpower. However, we believe that it is written under a misapprehension that the Texas Motor Carrier Act can conflict with the enforcement of the orders of the Office of Defense Transportation. In a previous opinion to the Railroad Commission

of Texas, Opinion No. O-5026, on the question of the right of the army to have a carrier operate army trucks over highways without a permit we took the view that whereever the Federal Government in exercise of its war power directed that things be done in a certain way, that this war power was superior to the State's police power, and that the Texas Motor Carrier Act accordingly would be limited in its application so as not to run athwart any order issued by the Federal Government pursuant to authorization of Congress. We quote from said opinion:

"Federal War Power is Superior to State
Police Power

"We believe that it is possible to answer this question by predicating our answer upon the war powers of the federal government.

"In upholding the right of the United States to take over and control the railroads in time of war to the exclusion of any rights of the states therein, Mr. Chief Justice White in Northern Pacific Railroad Company vs North Dakota, 250 U. S. 135, said:

"'The complete and undivided character of the war power of the United States is not disputable...

"'The elementary principle that, under the Constitution, the authority of the government of the United States is paramount when exerted as to subjects concerning which it has the power to control, is indisputable. This being true, it results that although authority to regulate within a given sphere may exist in both the United States and in the states, when the former calls into play constitutional authority within such general sphere the necessary effect of doing so is, that to the extent that any conflict arises the state power is limited, since in case of conflict that which is paramount necessarily controls that which is subordinate.'

"The powers of congress over intrastate commerce are plenary when a federal instrumentality or national purpose is involved.

"In passing upon the same question the New York Court of Appeals in Public Service Commission vs New York Central Railroad 129 N. E. 455, said:

"'This action (intrastate rate fixing by a federal agency) was not justified by any of the ordinary rules of law. It can be sustained solely as the exercise of the war powers of the United States. And these powers are not limited by these ordinary rules. They are not bounded by any

specific grant of authority. They are not unlike what, in the states, we call the police power, but the police power raised to the highest degree. They are such powers as are essential to preserve the very life of the nation itself. When requisite to this end the liberty of the citizen, the protection of private property, the peacetime rights of the states, must all yield to necessity.'

"The right of the federal government to invade the peace-time police powers of the State is shown in those cases upholding its authority to prevent sale of intoxicating liquors in areas about army posts in time of war, and avering like authority to punish in federal courts for the maintenance of houses of ill fame in areas about army posts, notwithstanding said areas are within a state. In U. S. vs Casey, 247 Fed. 362, in upholding the right of the Secretary of War to forbid the keeping of a house of ill fame within five miles of a military camp, the court said:

"'. . .In answer to the argument that the power to establish the ordinary regulations of police has been left to the individual states, and cannot be assumed by the national government, it is sufficient to say that the statute here assailed rests, not upon the police power, but upon the war power, conferred on Congress and recognized by the law of nations.'"

In case of conflict with the State's police power the federal war power is paramount thereto and controls. Therefore, our answer to your questions is that no truck owner, operator, lessor or lessee, whether or not he has a certificate of public convenience and necessity or permit of the Railroad Commission, can be subjected to any of the fines and penalties provided for in the Texas Motor Carrier Act for using his truck in a particular manner if such action be required of him by a lawful order of the O. D. T., even though such order conflict with the terms of the Texas Motor Carrier Act.

APPROVED APR 2, 1943

Yours very truly,

/s/ Grover Sellers

ATTORNEY GENERAL OF TEXAS

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE          By  /s/ David W. Heath
BY /s/ BWB              David W. Heath
CHAIRMAN                   Assistant

DWH:PM:LM