SAM BRAUNSTEIN et al., Respondents, *v.* DAVID SWARTZ, Appellant.*

Supreme Court, Appellate Term, Second Department, September 17, 1947.

* See *Swartz* v. *Braunstein*, 272 App. Div. 1038, for denial by Appellate Division, Supreme Court, of motion to stay issuance of warrant of eviction. Cf. *Ritacco* v. *Morris*, 189 Misc. 987.— [REP.

*Benjamin Heller* and *Nathan Amchan* for motion.

*Hyman B. Schutzer* opposed.

STEINBRINK, J. Tenant-appellant moves for an order staying issuance of a warrant of eviction pending the determination of an appeal from an order denying his motion to vacate a final order in favor of the landlord.

Summary proceedings were heretofore instituted subsequent to the issuance of an Office of Price Administration certificate pursuant to paragraph (1) of subdivision (b) of section 6 of the Rent Regulation for Housing in the New York City Defense-Rental Area (10 Federal Register 11668), authorizing the tenant's eviction " solely for occupancy of the premises * * * by [the] * * * son and daughter-in-law of Land-lord-Petitioner." The final order was made on February 13, 1947, and was affirmed on appeal (N. Y. L. J., June 23, 1947, p. 2471, col. 6). Execution of a warrant of dispossess was stayed by the trial justice until August 1, 1947.

On July 14, 1947, while the stay was still in effect, the tenant moved in the court below to vacate the final order on the ground that, effective July 1, 1947, the new Housing and Rent Act of 1947 (Public Law 129 — 80th Cong., 1st Sess.) limits eviction from controlled dwelling space to a situation where the landlord seeks in good faith to recover such space " for his immediate and personal use and occupancy as housing accommodations " and that this authorization does not extend to any person other than the landlord. From the order denying that motion, the tenant has taken an appeal, which is now pending in this court.

Meanwhile the tenant brought an action in the Supreme Court, Kings County, for a judgment declaring his rights under the new rent law above referred to, and in said action he moved for an injunction *pendente lite* to restrain issuance of a warrant of dispossess. That motion came on to be heard before Mr. Justice KLEINFELD and resulted in the following disposition:

" The plaintiff will be granted a temporary injunction pending any appeal he may take to the Appellate Term from the order made in the Municipal Court denying his motion to vacate the final order of February 13, 1947, and for other relief and pending a decision by the Appellate Term of any application for a stay pending such appeal. Should the Appellate Term deny such stay on the ground that the Municipal Court lacked the power to grant the relief and that therefore it also lacks such power, the temporary injunction will be continued during the pendency of this action; should the Appellate Term, however, deny such stay on the merits or should no application for a stay be made to it, the temporary injunction will be dissolved upon due notice to the plaintiff.

" This court deems it proper that the two questions raised by the motion — (1) the meaning of the Housing and Rent Act of 1947 and its effect upon the final order of February 13, 1947, and (2) the power of the Municipal Court and therefore the Appellate Term to grant the relief sought on the present application — be decided by the Appellate Term in the first instance." (N. Y. L. J., Aug. 7, 1947, p. 224, col. 3.)

At this time we are merely called upon to decide whether the issuance of a warrant of dispossess shall temporarily be stayed pending the determination of the appeal. Ultimately, however, two basic questions will come up for consideration. One relates to the effect of the new rent law upon a final order made prior to July 1, 1947, and the other involves an interpretation of the term " for his immediate and personal use," as employed in paragraph (2) of subdivision (a) of section 209 of the new statute.

As to the first of these questions, it may be well to call attention to a recent decision of the Supreme Court recognizing the right of Congress to enact laws to operate retroactively so as to limit or interfere with rights acquired under prior judgments in State courts. (*Fleming* v. *Rhodes,* 331 U. S. 100.) It is a well-settled principle, however, that statutes are presumed to be prospective in operation and they will not be given retrospective effect as to antecedent rights in the absence of an unequivocal expression of such legislative intent. (*Western N. Y. & Pa. Ry. Co.* v. *City of Buffalo,* 296 N. Y. 93.) There is no provision in the new statute which would furnish a basis for retroactive construction.

With respect to the remaining question, the tenant in effect says that the new statute has placed a more rigid restraint on eviction than was permitted under the former rent regulation.

A comparison of the wording in both measures would not appear to justify this contention. As has already been noted, the new statute authorizes eviction by a landlord " for his immediate and personal use and occupancy ". Paragraph (6) of subdivision (a) of section 6 of the superseded Rent Regulation permitted eviction where the landlord sought possession of the housing accommodations " for use and occupancy as a dwelling for himself ". We find ourselves unable to accept the tenant's narrow interpretation of the present statute. The particular provision under consideration is no more restrictive in scope than the quoted language of paragraph (6) of subdivision (a) of section 6. The change, if any, is merely in phraseology. Since we have heretofore interpreted the words " for himself," as used in paragraph (6) of subdivision (a) of section 6, to be sufficiently embracive to include relatives of the landlord (see *Moak* v. *Mehlman,* 185 Misc. 992) we can see no reason for a different interpretation of the phrase " for his immediate and personal use ".

This viewpoint finds support in the surrounding context of the new statute. There is nothing in the debates and proceedings in Congress to indicate that it was intended to limit evictions in the manner here contended for by the tenant. Sufficient appears in the statute itself to sustain a more liberal interpretation. More specifically, in a preliminary " Declaration of Policy " Congress states that " unnecessary or unduly prolonged controls over rents would be inconsistent with a return to a peacetime economy " and it further declares its present purpose " to terminate at the earliest practicable date all Federal restrictions on rents on housing accommodations ". (§ 201, subds. [a], [b].) Bearing in mind the general legislative scheme to lessen and eventually eliminate Federal control over housing accommodations and the prior declared legislative intent that there should be no compulsory sale of goods or rental of property we should give effect to the legislative intent by broad interpretation toward that end.

Under the circumstances we should not ascribe to Congress a design to deny the landlord the right to recover his own property for contemplated use by another member of his family. To do so would make for an unconscionable result. Thus, it requires no stretch of the imagination to envisage a situation where a person is desirous of providing housing accommodations for an ailing or dependent relative. Such was the case in *Wichick* v. *Shapiro* (N. Y. L. J., June 23, 1947, p. 2471, col. 7). Oftentimes the duty to support others is more a matter of

legal compulsion than moral suasion, as in the case of a dependent wife, child or poor relative who is likely to become a public charge. (N. Y. City Dom. Rel. Ct. Act [L. 1933, ch. 482], § 101, subd. 3; Code Crim. Pro., § 914 *et seq.*) Subdivision (2) of section 92 of the Domestic Relations Court Act empowers the court to include in the requirements of an order for support "the providing of necessary *shelter*, food, [and] clothing * * *." In the *Wichick* case (*supra*) Justice RUBENSTEIN aptly observed that proper housing may be an essential element of adequate support. Manifestly, it would border on the ridiculous to prevent a person from recovering housing accommodations where he seeks the same for a needy or dependent near relative in any of the situations just discussed. Yet, such a result may well follow if the tenant's interpretation of the new statute is accepted.

Between a rational, sensible and practical construction of a statute and one which is unreasonable, absurd or impracticable, we should prefer the former over the latter. (*Public Service Commission* v. *New York Central R. R. Co.*, 193 App. Div. 615, affd. 230 N. Y. 149.) Applying this simple guide, we hold that a landlord is authorized to seek dwelling space for other members of his family where he proceeds in good faith and otherwise brings himself within the requirements of the new statute and local law.

The instant motion to stay the issuance of a warrant of eviction should be denied.

MACCRATE and RUBENSTEIN, JJ., concur.

Motion denied.