George A. Timone, J.
The issue here involved is whether under the new State-wide Family Court Act, effective September 1, 1962, the court has been divested of all power, whatever the circumstances or the needs of the child, to “ place ” in the State Training School for Girls, a girl coming within the present definition of “ a person in need of supervision.”
Under .the new definitions in the Family Court Act a “ Juvenile delinquent ” means a person under 16 “ who does any act which, if done by an adult, would constitute a crime ’ ’; whereas a “ ‘ Person in need of supervision ’ means a male less than sixteen years of age and a female less than eighteen years of age who is an habitual truant or who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of parent or other lawful authority.” (Family Ct. Act, § 712.)
This child was brought to court on a parental petition. In August, 1961 after a hearing the court found that the child, then under 14 years of age, was habitually disobedient and beyond parental control, that she associated with undesirable companions mostly boys 18 and 19 years of age; that she entertained them in her parents ’ absence; drank intoxicating beverages; was sexually promiscuous; absconded from home for varying times on four separate occasions, and was a chronic truant and a behavior problem in school.
Upon making such finding, the court in August, 1961 remanded the child to Youth House for Girls, which is a facility for temporary detention, and ordered an investigation and social study by the Probation Department, as well as a psychological and psychiatric examination at the court’s Bureau of Mental Hygiene Services. Both reports recommended the need of institutional care. The mother, and even the girl, acquiesced. The court agreed and ordered such placement. It was fortunate to receive a qualified acceptance by one of the voluntary institutions and in October, 1961 the child was remanded there for an experimental period of three months. Despite the excellent care and treatment available at this institution, the girl’s adjustment was poor and she did not profit by the program.
Upon her return to court in January, 1962, as an alternative to then placing the child in the State Training School for Girls, she was permitted to return home and placed on probation. Her conduct continued to deteriorate. She then absconded and was missing from home from June 8 until she was picked up by the police and returned to court on July 24,1962. During this interval she associated with dissolute adults, was sexually promiscuous; was forcibly raped by one man who has been arrested; and she, of course, truanted during the entire school period. On *614 July 24, the court again remanded her to Youth House for Girls pending exploration of placement. Applications, accompanied as required by a complete case study, were submitted to three separate voluntary institutions, all of which have informed the court that they are not in a position to accept her.
The State Department of Social Welfare has officially informed this court that under its interpretation of the new Family Court Act, after September 1, 1962 admissions to the State Training Schools are limited to children who are adjudicated and “ does any act which, if done by an adult, would constitute a crime.” The department points out that “80 to 90 percent of the girls in the State Training School do not appear to have committed an act which would constitute a crime ”, and it concludes that ‘ ‘ Under the new law, alternate resources will have to be used for cases of this kind.”
The provisions of the Social Welfare Law (§ 425 et seq.) dealing with the State Training Schools refer to the children only as “ Juvenile delinquents ” or “ delinquents ” and not as “ Person in need of supervision.” They also refer only to “commitments ’ ’ and not to ‘ ‘ placements. ’ ’ These sections were enacted before 1962.
The 1962 Family Court Act provides in section 753 that on an adjudication of “juvenile delinquency” the court may make an order “ placing ” the respondent under section 756 or “ committing ” him under section 758. It then provides in section 754 that on an adjudication of “ person in need of supervision ” the court may make an order “placing” under section 756. No power is given to “ commit ” under section 758.
The pertinent provision of section 756 permits the court only to ‘ ‘ place the child * * * in the custody of * * * an authorized agency”; whereas under section 758 the court may ‘ ‘ commit ” to “ an institution suitable for the commitment of a delinquent child maintained by the state or any subdivision thereof or to an authorized agency.”
At this point of the legislative history (Senate Int. No. 3494, Print No. 3789) it would be a reasonable interpretation of legislative intent that a juvenile delinquent may be either placed in or committed to a voluntary institution but may only be committed to a State institution; whereas a “Person in need of supervision ” may be “ placed ” in a voluntary institution but may not be placed in or committed to a State Training School. Judges, Bar Associations and many civic groups objected to this seeming unprecedented restriction on the court’s powers in dealing with children who urgently need institutional care. The next edition of this bill (Print No. 4501) then added a new section 119 *615 which now defines an “ authorized agency ”, unless the specific context indicates otherwise, to mean and include not only a voluntary institution but as well “ any institution supported or controlled by the state or by a subdivision thereof.”
Thus the law as enacted, with this meaningful change now provides: (1) A “ Person in need of supervision ” may be placed in (not committed to) an “ authorized agency ” and (2) a State institution is an “ authorized agency.” With these as a major and minor premise, how can it be said that a ‘ ‘ Person in need of supervision ” may still not be “ placed ” in a State institution? It will be noted that a commitment may not exceed 3 years (§ 758), and that a placement may be for an initial period of only 18 months but is renewable for successive yearly periods up to a boy’s 18th and a girl’s 20th birthday. (§ 756.)
It is not an infrequent occurrence that in enacting far-reaching statutes, the Legislature initially overlooks some of the so-called conforming changes that are indicated in other statutes. Thus the failure of the Legislature to conform the language of some sections of the Social Welfare Law (§ 425 et seq.) i.e., by inserting the words ‘ ‘ Person in need of supervision ’ ’ after the words “ juvenile delinquent ” seems far less indicative of legislative intent than does the expressed inclusion of State Training Schools in the definition of authorized agencies. Other needed conforming changes in these sections are the insertion of the words “or placement” after “commitment.” Untroubled by these omissions the Department of Social Welfare suggests that “placement under Section 756 is the preferred method of sending children to the State Training Schools.”
A further consideration is that the pertinent provision of section 13 of article VI of the 1961 constitutional amendment limits this court’s jurisdiction to actions and proceedings for the “ protection, treatment, correction and commitment of those minors who are in need of the exercise of the authority of the court because of circumstances of neglect, delinquency or dependency as the legislature may determine.” Thus, if section 712 of the Family Court Act be interpreted to exclude a “ Person in need of supervision ” from the term “ delinquency ” as used in the Constitution it would appear that the Legislature has excluded the court from all jurisdiction over such cases. To avoid such grave doubts as to constitutionality, a “Person in need of supervision ’ ’ must be interpreted to mean what it really is, a category of delinquency as to which the Legislature directs the use of a different label, the substitution of the softer word “ place ” for “ commit ”, and the review of these placements at the end of 18 months. A court, especially one of original jurisdiction, will *616 wherever possible seek to avoid not only the conclusion of unconstitutionality, but also any grave doubts upon that score. (Tauza v. Susquehanna Coal Co., 220 N. Y. 259, affg. 174 App. Div. 866; National Psychological Assn. for Psychoanalysis v. University of the State of N. Y., 18 Misc 2d 722, affd. 10 A D 2d 688, affd. 8 N Y 2d 197; Rector, Churchwardens & Vestrymen of Church of Holy Trinity v. Melish, 4 A D 2d 256, affd. 3 N Y 2d 476.)
It is also a fundamental rule of statutory construction that if there be ambiguity in a statute or two or more permissible interpretations, the court will avoid the construction which causes objectionable consequences (People v. Ryan, 274 N. Y. 149); or leads to an unreasonable and absurd or harmful result (450 Estates v. Favorite Paper Box Co., 127 N. Y. S. 2d 185; Braunstein v. Swartz, 189 Misc. 791).
It is the sad fact of life that many of the so-called incorrigibility cases coming before the court, of which the instant case is typical, present a much more difficult problem than do most cases in which the child has committed an act which, if done by an adult, would constitute a crime.
The constantly decreasing percentage of children requiring institutional care who can be accommodated in voluntary institutions has now reached 25% or less. The others must of necessity be accommodated in State Training Schools. Sensitive to this serious problem, the Legislature and the Governor have approved the opening of the Troy Annex to the Training School for Girls at Hudson, and within five months a second annex now under construction will be opened. It is unreasonable to suppose that the Legislature and the Governor now intend to close or depopulate these facilities by screening out 80 to 90% of the children now served, and give the court no alternative but to abandon these children in the open community.
The child, for obvious reasons here referred as to “ Jane Doe ”, is therefore “ placed ” in the State Training School for Girls pursuant to sections 119 and 756 of the Family Court Act, and her remand to Youth House for Girls is continued pending her transportation to the training school. The court holds it to be the legal duty of the State Department of Social Welfare to receive and accept this child for appropriate care and treatment.
In view of the public interest here involved and the numerous other children similarly situated, if the department does not promptly comply, it is expected that it will immediately seek an appellate review of this order. The next Legislature may wish to consider whether there is need to remove any remaining doubt as to its intention.